OFFICE OF DISCIPLINARY COUNSEL *v.* YURICH.

[Cite as *Disciplinary Counsel v. Yurich* (1997), 78 Ohio St.3d 315.]

(No. 96–2433—Submitted January 22, 1997—Decided April 30, 1997.)

*Geoffrey Stern,* Disciplinary Counsel, and *Harald F. Craig III,* Assistant Disciplinary Counsel, for relator.

*Mark H. Aultman,* for respondent.

*Per Curiam.* We adopt the findings and conclusions of the board. An attorney's disclosure of client confidences has heretofore warranted a public reprimand. *Geauga Cty. Bar Assn. v. Psenicka* (1991), 62 Ohio St.3d 35, 577 N.E.2d 1074. Although in this case respondent's disclosure was inadvertent, respondent's negligence enabled a son to discover that he was to be disinherited by his parents, one of whom was still living.

In addition, the board found that respondent's mailing was a "targeted mailing" and, as such, was subject to the restrictions of DR 2–101(F)(2)(e). That rule reads in part:

"A lawyer or law firm may engage in written solicitation by direct mail addressed to persons or groups of persons who may be in need to specific legal service * * *, provided the letter of solicitation * * * (e) Includes in its text and

on the envelope in which mailed, in red ink and in type no smaller than 10 point, the recital—'ADVERTISEMENT ONLY.' "

We adopted DR 2–101(F)(2), directed to "targeted mailings," in response to *Shapero v. Kentucky Bar Assn.* (1988), 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475, which held that direct mail by an attorney targeted to specific recipients knowing they are likely to need a particular legal service offered by the attorney is constitutionally protected commercial speech. A Disciplinary Rule such as the one in DR 2–101(F)(2) was specifically considered in *Florida Bar v. Herrick* (Fla.1990), 571 So.2d 1303, certiorari denied (1991), 501 U.S. 1205, 111 S.Ct. 2798, 115 L.Ed.2d 972. In that case, the Florida Supreme Court publicly reprimanded a lawyer who mailed unsolicited letters not marked as advertising to prospective clients. In *Matter of Anonymous* (Ind.1994), 630 N.E.2d 212, 215, the Indiana Supreme Court, faced with a similar situation, sanctioned the attorneys with a private reprimand "based on the unique circumstances and factors in mitigation present in these cases."

Respondent not only "targeted" his mailing, but through the conveniences of computer programming, he also was able to "personalize" it, that is, address it to the particular recipient with a comment (albeit erroneous in this case) about "your parent(s)." As the United States Supreme Court said in *Shapero* at 476, 108 S.Ct. at 1923, 100 L.Ed.2d at 486:

"[A] letter that is personalized (not merely targeted) to the recipient presents an increased risk of deception, intentional or inadvertent. It could, in certain circumstances, lead the recipient to overestimate the lawyer's familiarity with the case or could implicitly suggest that the recipient's legal problem is more dire than it really is. * * * Similarly, an inaccurately targeted letter could lead the recipient to believe she has a legal problem that she does not actually have * * *."

Respondent is hereby publicly reprimanded. Costs taxed to the respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

COOK, J., dissenting. I believe that respondent's conduct warrants a more severe sanction than a public reprimand.

The public, and particularly the elderly public, is vulnerable to the tactics employed by this respondent. See, generally, Note, Client Outreach 101: Solicitation of Elderly Clients by Seminar under the Model Rules of Professional

Conduct (1994), 62 Fordham L.Rev. 1547. Accordingly, it is this court's responsibility to promulgate and enforce "prophylactic regulation in furtherance of the State's interest in protecting the lay public." *Ohralik v. Ohio State Bar Assn.* (1978), 436 U.S. 447, 468, 98 S.Ct. 1912, 1925, 56 L.Ed.2d 444, 461, rehearing denied (1978), 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198.

Our Code of Professional Responsibility limits the manner in which an attorney may solicit clients. Respondent exceeded several of those limits.

The mailing at issue was designed to generate traffic for respondent's living trust seminars. It was blindly sent as part of a mass mailing without regard to the recipient's individual circumstance. In all, respondent sent two hundred fifty mailings of similar content.

To induce seminar attendance, respondent improperly personalized the mailing, directing it toward the recipient's sense of responsibility stemming from being named successor trustee. See DR 2–101(F)(2)(b). In fact, the language and tone of the mailing misleadingly suggested that attendance was necessary for a trustee to faithfully discharge his duties under the trust. See DR 2–101(A)(1). Further, without permission of his clients, the respondent (two hundred fifty times) disclosed client confidences in pursuit of personal advantage. See DR 4–101(B)(1) and (3). By disclosing terms of his clients' trusts, the respondent not only increased his potential client base, but also used a relative's creation of a living trust to advance the general wisdom of that estate planning tactic.

The mailing was also misleading in other ways. Respondent encouraged the recipient of the mailing to attend his seminar to determine "whether a Living Trust makes sense for you." He implied that a living trust would benefit the recipient in any case, however, by stating:

"[E]veryone, regardless of their age, who owns real property, should consider a Living Trust for themselves. ***You may not realize it but your estate will eventually be controlled by your will, your attorney and the probate court, unless you consider a logical alternative. This alternative is a Living Trust.***" (Emphasis and bold type *sic.*)

Respondent's mailing also discounted the size of one's estate as an appropriate factor to consider before establishing a living trust, by stating:

"While trusts have been around for decades, many individuals and their attorneys have perceived trusts to be suitable only for the very rich. Fortunately, in recent years, several area attorneys have started to educate the general public as to the advantages of using Living Trusts to avoid Probate for families and individuals with modest estates."

320

Because of the scope of respondent's disregard for the principles embodied in our Code of Professional Responsibility regarding client solicitation, I would suspend him from the practice of law for six months.