**[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 315.]**

OFFICE OF DISCIPLINARY COUNSEL *v*. YURICH.

**[Cite as *Disciplinary Counsel v. Yurich*, 1997-Ohio-239.]**

*Attorneys at law—Misconduct—Public reprimand—Knowingly revealing secrets or confidences of a client—Using confidences or secrets of a client to the advantage of oneself without the client's consent—False, fraudulent, misleading, deceptive, self-laudatory, or unfair statements—Direct mail solicitation not containing disclosures mandated by the Disciplinary Rules.*

(No. 96-2433—Submitted January 22, 1997—Decided April 30, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-75.

———————————

{¶ 1} In April 1992, respondent, Robert R. Yurich of Cleveland, Ohio, Attorney Registration No. 0025387, prepared a living trust for Carl and Ruth Grasser ("trustors"). The living trust designated Kenneth Grasser, a son of the trustors, as successor trustee and Charles Grasser, a grandson of the trustors, as the alternate successor trustee. Bruce Grasser, a second son of the trustors and Charles's father, was not named in the trust either as successor trustee or as beneficiary.

{¶ 2} Carl Grasser died on April 3, 1994. In July 1994, as part of a onetime mailing to two hundred fifty successor trustees named in trusts which he had prepared, respondent sent a letter to Carl's grandson, Charles Grasser, incorrectly stating that his parents, rather than his grandparents, had employed respondent to establish a living trust for them. The remainder of the letter was directed to the advantages of living trusts over other estate planning alternatives, and stated that respondent "invite[s] you, as a Successor Trustee, to attend one of my up-coming

Seminars. I believe this Seminar would greatly help your understanding of your parent's [*sic*] trust and what your responsibility will be in the event of their disability or death. This would also give you an opportunity to consider whether a Living Trust makes sense for you. One benefit of having a Living Trust prepared by my office is that I will provide a family discount from my established fees." In his letter, respondent then set out the time and place of three future seminars on living trusts to be given by respondent.

{¶ 3} The letter to Charles Grasser was directed to his former address, that of his father, Bruce Grasser, the son of the trustors who had not been named in the living trust. Bruce, who had implied permission from Charles to examine his mail before forwarding it to him, opened the letter from respondent and showed it to a neighbor, who was an attorney. As a result, Bruce filed a grievance with the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 4} Based on this grievance, in October 1995, relator, Office of Disciplinary Counsel, filed a complaint against respondent charging in one count that by sending the letter, respondent had violated DR 4-101(B)(1) (knowingly revealing the secrets or confidences of a client) and 4-101(B)(3) (using the confidences or secrets of a client to the advantage of oneself without the client's consent). In a second count relator charged that the letter constituted a direct mail solicitation in violation of 2-101(A)(1) (false, fraudulent, misleading, deceptive, self-laudatory, or unfair statements) and 2-101(F)(2)(e) (direct mail solicitation must contain in the text and on the envelope the words "ADVERTISEMENT ONLY" in red ink and in type no smaller than 10 point). Respondent filed an answer and the matter was heard before a panel of the board on March 15, 1996.

{¶ 5} It was stipulated before the panel that the letter was sent to Bruce's address by mistake and that the letter incorrectly stated that Charles's parents rather than his grandparents were the trustors. Respondent in his testimony admitted that the trustors did not authorize sending the letter. Nevertheless, respondent argued

before the panel that the letter did not convey a client confidence, since it incorrectly stated that Charles's parents had named him as successor trustee and that Charles' parents were not respondent's clients. Respondent further asserted that even if the letter had correctly informed Charles that his grandparents had named him successor trustee, no client confidence was breached, since the matter conveyed was not confidential. It is also apparent from the record that neither the clients nor the person to whom the letter was addressed had filed the grievance.

{¶ 6} As to the charges in count two, respondent contended that the letter did not constitute a targeted mailing and was constitutionally protected commercial speech.

{¶ 7} The panel found that respondent's clients, the trustors, had not given respondent permission to discuss with their grandson his status as successor trustee and that respondent had no implied authority to disclose that information to the grandson. Additionally, the panel found that respondent had used confidential information by including the grandson, a successor trustee, on respondent's seminar mailing list. The panel concluded that as to count one respondent had violated DR 4-101(B)(1) and 4-101(B)(3).

{¶ 8} With respect to count two, the panel found that respondent's letter was misleading in that it suggested that Charles Grasser's attendance at a seminar was necessary. Further, portions of the letter were self-laudatory and therefore violated DR 2-101(A)(1). The panel also found that since the letter was specifically sent to successor trustees, it was targeted mail requiring disclosures mandated by the Disciplinary Rules. The panel concluded that respondent had violated DR 2-101(F)(2)(e). Based on the two violations, the panel recommended that respondent be publicly reprimanded.

{¶ 9} The board adopted the findings, conclusions, and recommendation of the panel.

_____

*Geoffrey Stern,* Disciplinary Counsel, and *Harald F. Craig III*, Assistant Disciplinary Counsel, for relator.

*Mark H. Aultman*, for respondent.

_____

**Per Curiam.**

**{¶ 10}** We adopt the findings and conclusions of the board. An attorney's disclosure of client confidences has heretofore warranted a public reprimand. *Geauga Cty. Bar Assn. v. Psenicka* (1991), 62 Ohio St.3d 35, 577 N.E.2d 1074. Although in this case respondent's disclosure was inadvertent, respondent's negligence enabled a son to discover that he was to be disinherited by his parents, one of whom was still living.

**{¶ 11}** In addition, the board found that respondent's mailing was a "targeted mailing" and, as such, was subject to the restrictions of DR 2-101(F)(2)(e). That rule reads in part:

"A lawyer or law firm may engage in written solicitation by direct mail addressed to persons or groups of persons who may be in need to specific legal service * * *, provided the letter of solicitation * * * (e) Includes in its text and on the envelope in which mailed, in red ink and in type no smaller than 10 point, the recital—'ADVERTISEMENT ONLY.' "

**{¶ 12}** We adopted DR 2-101(F)(2), directed to "targeted mailings," in response to *Shapero v. Kentucky Bar Assn.* (1988), 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475, which held that direct mail by an attorney targeted to specific recipients knowing they are likely to need a particular legal service offered by the attorney is constitutionally protected commercial speech. A Disciplinary Rule such as the one in DR 2-101(F)(2) was specifically considered in *Florida Bar v. Herrick* (Fla.1990), 571 So.2d 1303, certiorari denied (1991), 501 U.S. 1205, 111 S.Ct. 2798, 115 L.Ed.2d 972. In that case, the Florida Supreme Court publicly reprimanded a lawyer who mailed unsolicited letters not marked as advertising to

prospective clients. In *Matter of Anonymous* (Ind.1994), 630 N.E.2d 212, 215, the Indiana Supreme Court, faced with a similar situation, sanctioned the attorneys with a private reprimand "based on the unique circumstances and factors in mitigation present in these cases."

{¶ 13} Respondent not only "targeted" his mailing, but through the conveniences of computer programming, he also was able to "personalize" it, that is, address it to the particular recipient with a comment (albeit erroneous in this case) about "your parent(s)." As the United States Supreme Court said in *Shapero* at 476, 108 S.Ct. at 1923, 100 L.Ed.2d at 486:

"[A] letter that is personalized (not merely targeted) to the recipient presents an increased risk of deception, intentional or inadvertent. It could, in certain circumstances, lead the recipient to overestimate the lawyer's familiarity with the case or could implicitly suggest that the recipient's legal problem is more dire than it really is. * * * Similarly, an inaccurately targeted letter could lead the recipient to believe she has a legal problem that she does not actually have * * *."

{¶ 14} Respondent is hereby publicly reprimanded. Costs taxed to the respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

––––––––––––––––––

**COOK, J., dissenting.**

{¶ 15} I believe that respondent's conduct warrants a more severe sanction than a public reprimand.

{¶ 16} The public, and particularly the elderly public, is vulnerable to the tactics employed by this respondent. See, generally, Note, Client Outreach 101: Solicitation of Elderly Clients by Seminar under the Model Rules of Professional

Conduct (1994), 62 Fordham L.Rev. 1547. Accordingly, it is this court's responsibility to promulgate and enforce "prophylactic regulation in furtherance of the State's interest in protecting the lay public." *Ohralik v. Ohio State Bar Assn.* (1978), 436 U.S. 447, 468, 98 S.Ct. 1912, 1925, 56 L.Ed.2d 444, 461, rehearing denied (1978), 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198.

{¶ 17} Our Code of Professional Responsibility limits the manner in which an attorney may solicit clients. Respondent exceeded several of those limits.

{¶ 18} The mailing at issue was designed to generate traffic for respondent's living trust seminars. It was blindly sent as part of a mass mailing without regard to the recipient's individual circumstance. In all, respondent sent two hundred fifty mailings of similar content.

{¶ 19} To induce seminar attendance, respondent improperly personalized the mailing, directing it toward the recipient's sense of responsibility stemming from being named successor trustee. See DR 2-101(F)(2)(b). In fact, the language and tone of the mailing misleadingly suggested that attendance was necessary for a trustee to faithfully discharge his duties under the trust. See DR 2-101(A)(1). Further, without permission of his clients, the respondent (two hundred fifty times) disclosed client confidences in pursuit of personal advantage. See DR 4-101(B)(1) and (3). By disclosing terms of his clients' trusts, the respondent not only increased his potential client base, but also used a relative's creation of a living trust to advance the general wisdom of that estate planning tactic.

{¶ 20} The mailing was also misleading in other ways. Respondent encouraged the recipient of the mailing to attend his seminar to determine "whether a Living Trust makes sense for you." He implied that a living trust would benefit the recipient in any case, however, by stating:

"[E]veryone, regardless of their age, who owns real property, should consider a Living Trust for themselves. ***You may not realize it but your estate will eventually be controlled by your will, your attorney and the probate court, unless***

6

*you consider a logical alternative.  This alternative is a Living Trust*.”  (Emphasis and bold type *sic.*)

**{¶ 21}** Respondent's mailing also discounted the size of one's estate as an appropriate factor to consider before establishing a living trust, by stating:

“While trusts have been around for decades, many individuals and their attorneys have perceived trusts to be suitable only for the very rich.  Fortunately, in recent years, several area attorneys have started to educate the general public as to the advantages of using Living Trusts to avoid Probate for families and individuals with modest estates.”

**{¶ 22}** Because of the scope of respondent's disregard for the principles embodied in our Code of Professional Responsibility regarding client solicitation, I would suspend him from the practice of law for six months.

_____